# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-1221


**DEVRA RENEE STOCKMAN**

**VERSUS**

**MEDICAL TECHNOLOGY, INC.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 02
PARISH OF GRANT, NO. 10-11590
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

### SHANNON J. GREMILLION
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**PETERS,** Judge, agrees and assigns additional reasons.


### AFFIRMED IN PART AND REVERSED IN PART.


**Donald J. Anzelmo**
**Snellings, Breard, Sartor, Inabnett & Trascher, L.L.P.**
**1503 N. 19th St.**
**Monroe, LA 71201**
**(318) 387-8000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Medical Technology, Inc.**

**George Carnal Gaiennie, III**
**Attorney at Law**
**1920 Jackson St.**
**Alexandria, LA 71301**
**(318) 767-1114**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Devra Renee Stockman**

**Chris J. Roy, Sr.**
**Attorney at Law**
**1920 Jackson St.**
**Alexandria, LA 71301**
**(318) 767-1114**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Devra Renee Stockman**

**GREMILLION, Judge.**

Ms. Devra Renee Stockman appeals the judgment of the Workers' Compensation Judge (WCJ) that dismissed her disputed claim for compensation against her employer, Medical Technology, Inc. (MTI). MTI has also appealed and argues that it should not have been assessed penalties and attorney fees for failure to authorize a cervical nerve-root block procedure. For the reasons that follow, we affirm in part and reverse in part.

## FACTS

Ms. Stockman was employed by MTI on November 14, 2008, when she sustained an on-the-job injury in the course and scope of her employment as a delivery driver. Dr. Todd Drury, an Alexandria orthopedic surgeon, performed two surgeries on Ms. Stockman's shoulders. About ten months after the accident, Ms. Stockman began to complain to Dr. Drury of neck pain. This court previously addressed Ms. Stockman's claim and ordered MTI to authorize and pay for a cervical nerve-root block procedure recommended by Dr. Drury. *Stockman v. Med. Tech., Inc.*, 11-285 (La.App. 3 Cir. 12/14/11), 81 So.3d 198, *writ denied*, 12-145 (La. 3/23/12), 85 So.3d 94. Ms. Stockman received weekly indemnity benefits from the date of the accident until October 9, 2010, when MTI quit paying. Ms. Stockman then amended her disputed claim to seek reinstatement of her indemnity benefits and related penalties and attorney fees. Because MTI had still not authorized the cervical nerve-root block, Ms. Stockman was again pursuing authorization for that course of treatment.[1]

---

[1] Dr. Drury testified that Ms. Stockman had undergone a cervical epidural injection on September 30, 2010. He distinguished this from the nerve-root block, and testified that the epidural injection was probably performed rather than the nerve-root block due to miscommunication between his office and the operating facility.

Ms. Stockman's medical picture is complicated because she has had at least two accidents since her on-the-job accident. During the weekend of October 2, 2010, Ms. Stockman was sitting in a chair on her porch when it collapsed. She had to be taken by ambulance to a local hospital. Afterward, she reported to Dr. Drury that she was experiencing severe neck pain radiating into both arms and had to use a cane to walk. Later, on April 3, 2012, Ms. Stockman was rear-ended by a motorist on MacArthur Drive in Alexandria. After that collision, she continued to see Dr. Drury and also Dr. Troy Vaughn, an Alexandria neurosurgeon, for continued neck complaints and lumbar spine complaints as well.

After trial, the WCJ took the matter under advisement. Oral reasons for judgment were handed down in which the WCJ found that Ms. Stockman's neck complaints were not causally related to the on-the-job accident, but ordered MTI again to authorize the cervical nerve-root block and assessed MTI with attorney fees of $4,000.00 and a penalty of $2,000.00 for failing to authorize the testing. This appeal followed. Ms. Stockman argues that the WCJ erred in not finding the cervical complaints compensable and in finding that she is not disabled. MTI answered the appeal and urges that the award of attorney fees and penalties is unwarranted.

## ANALYSIS

The factual findings of the WCJ are reviewed under the manifest error standard. *Johnson v. Wal-Mart Stores, Inc.*, 11-1153 (La.App. 3 Cir. 2/8/12), 88 So.3d 527. This requires that, for us to reverse the WCJ, we must find that a review of the entire record demonstrates that the WCJ had no reasonable basis for his factual findings. *Id.* We are not permitted to skim the record to pick out those

2

items that support or contradict the WCJ, but must review it thoroughly and entirely. *Id.*

Dr. Drury testified that Ms. Stockman's medical profile was "complicated." Specifically, he testified:

> [T]he situation here in general is that you have a patient who has bilateral or both shoulders hurting from initial injury, doesn't have much neck discomfort, and then undergoes two surgeries, and over time has developed some changes in her posture and some changes in her activity level, and things that are gradually turning into what would be referred to as a chronic pain.
>
> . . . .
>
> Many patients that present in my clinic with shoulder pain actually have a cervical or a neck problem. And neck and shoulder problems often have overlap, so it's a very important part of the physical exam to make some effort to differentiate the source of the pain as being from the neck or from the shoulder. And at that time [November 2008], based on the exam we saw that day, I felt that her symptoms were primarily shoulder.
>
> .    . . .
>
> From a medical perspective, I don't find her progression and her appearance and the things that she complained with to be all that unusual because we see these type of issues commonly. . . .I think the length of time is unusual, but I think in light of the complaints prior to that, which are basically bilateral symptoms, vague symptoms, and symptoms that have not been particularly responsive to treatment, in light of that, I don't think it's unusual that eventually her neck surfaces as a potential culprit.

This testimony does not exclude the possibility in Dr. Drury's mind that Ms. Stockman's neck complaints were related to her shoulder injury. Indeed, they lend credence to the notion that her neck pain is a consequence of her continued shoulder problems. However, Dr. Drury also testified:

> Q    So it could be her neck symptoms could actually be unrelated to her work-related accident?
>
> A    That's possible, yes.

3

Q    It's just as likely as if they were?

A    I would say that's correct.

. . . .

Q    Okay, but none of those things were occurring within the first ten months?

A    Well, that's debatable. All of those things could have been occurring during the first ten months. That might be the reason that she's not getting better. That's the dilemma here, and that's what you guys are going to have to settle. . . . because I don't think I'm going to be able to clarify that for you.

The problem with eliciting an opinion from Dr. Drury is that he cannot take advantage of the results of the cervical nerve-root block he ordered. Without the cervical nerve-root block results, neither Dr. Drury nor the parties nor the WCJ had the benefit of a complete and accurate assessment of Ms. Stockman's health. We reverse the trial court on the issue of causation and remand for proceedings consistent with this opinion.

The issue of the cervical nerve-root block raises another problem with the WCJ's ruling. Dr. Drury unequivocally testified that Ms. Stockman was referred for the cervical nerve-root block, and that a miscommunication between his office and that of Central Louisiana Imaging Center resulted in the wrong test being conducted. The WCJ awarded Ms. Stockman penalties and attorney fees for MTI's refusal to authorize the test. MTI argues that the award should be reversed. We disagree. Ms. Stockman initiated her disputed claim for compensation because MTI refused to authorize the test in the first place.

Ms. Stockman also complains that the WCJ manifestly erred in finding that she is not disabled. Again, review of such a finding is governed by the manifest error rule. *Id.* Ms. Stockman underwent an exhaustive functional capacity

4

evaluation in Alexandria, which was administered by Mr. Bruce Odell, a licensed occupational therapist. Mr. Odell concluded that Ms. Stockman is capable of competitive employment. Further, Dr. Drury agreed with Ms. Stockman's vocational counselor that she could do work at Murphy Oil that was available, and Ms. Stockman testified that she did not apply for it, not because she was not capable of performing the work, but because she knew that she would not enjoy it. The problem arises, though, that if the cervical nerve-root block demonstrates a causal connection between Ms. Stockman's shoulder injury and her neck pain, and if additional treatment is necessary that renders her unable to work, she will be permanently deprived of a remedy if the WCJ's ruling stands. Accordingly, we reverse the WCJ's ruling pending the results of the diagnostic testing.

For the foregoing reasons we (1) affirm the penalty/attorney fee award for failure to comply with the WCJ order requiring authorization of the diagnostic test; (2) reverse the WCJ judgment terminating benefits and enter a judgment rejecting the request that they be reinstated at this time; (3) remand for the cervical nerve-root block ordered by the WCJ; and (4) defer a ruling on the cost issue.

**AFFIRMED IN PART AND REVERSED IN PART.**

DEVRA RENEE STOCKMAN

VERSUS

MEDICAL TECHNOLOGY, INC.

**PETERS, J. assigns additional reasons:**

I agree with the opinion rendered in this matter, but write additional reasons for the singular purpose of expanding on the factual aspects of the litigation as set forth in the opinion rendered. To that end, some of the facts set forth in the primary opinion may be repeated herein.

Soon after Ms. Stockman sustained her initial injury, she underwent two separate shoulder surgeries performed by Dr. Drury, and MTI does not dispute that her workplace injury caused the shoulder injuries. While she did not complain of cervical problems to Dr. Drury for ten months after the accident and after her two surgeries had basically resolved themselves, Dr. Drury suggested that he did not find her subsequent complaints to be unusual. In fact, the very purpose of the nerve-root-blockage procedure was to try to determine if there was a connection between the cervical complaints and the original injury.

The only issue before the WCJ on July 22, 2010, was whether the diagnostic test recommended by Dr. Drury should be authorized. However, the WCJ did not limit its opinion to that issue. Instead, the WCJ ordered that MTI authorize the nerve-root-blockage procedure and, at the same time, made a factual finding that

the shoulder and cervical complaints were not related. This court considered these inconsistent findings and, in doing so, affirmed the authorization of the nerve-root-blockage procedure and reversed the causation finding. *Stockman v. Med. Tech., Inc.*, 11-285 (La.App. 3 Cir. 12/14/11), 81 So.3d 198, *writ denied*, 12-145 (La. 3/23/12), 85 So.3d 94. On the latter issue, this court found that the WCJ had ruled on an issue not properly before it. *Id.* Additionally, this court went further and awarded Ms. Stockman $2,000.00 in statutory penalties for MTI's failure to authorize the diagnostic testing. *Id.*

MTI claims that even before our decision was handed down, it authorized the nerve-root-blockage procedure and that this resulted in the September 10, 2010 epidural injection. However, in its reasons for judgment arising from the April 25, 2013 hearing giving rise to this appeal, the WCJ concluded that the record contained no evidence that the authorization occurred. Additionally, with regard to MTI's argument that the epidural injection took the place of the nerve-root-blockage procedure, Dr. Drury testified that while both procedures might "treat" the same condition, the epidural injection was not the "diagnostic" test he requested.

Additionally, MTI asserts that even if Dr. Drury performed the wrong procedure, it is relieved of its responsibility under the judgment arising from the July 22, 2010 hearing because Dr. Drury has not pressed for the nerve-root-blockage procedure. In making this argument, MTI ignores the fact that Ms. Stockman has continued to press for the procedure. As I understand Dr. Drury's testimony, he basically gave up trying and simply described matters as how they were at the time of his testimony and not how they might have been had the diagnostic procedure been performed.

2

MTI also notes in argument to this court that Ms. Stockman sustained four accidents subsequent to the work injury, and two of those accidents are mentioned in this court's opinion. The first accident occurred in June of 2010, when Ms. Stockman fell out of a boat. The next is the October 2, 2010 chair incident referenced in this court's opinion, and MTI suggests that a third occurred in March of 2012, when Ms. Stockman fell up a flight of stairs. The fourth accident is the April 3, 2012 accident referenced in this court's opinion. While these may ultimately play a part in the long-range physical condition of Ms. Stockman, it is significant to note that the first accident occurred nine months after her initial cervical complaints and the request for the nerve-root-blockage procedure, and the last accident occurred five months after this court's first opinion.

MTI terminated Ms. Stockman's benefits nine days after the September 30, 2010 epidural procedure and even before the WCJ signed the November 10, 2010 judgment arising from the July 22, 2010 hearing. Despite, the release of this court's opinion reversing the WCJ's causation decision, it never reinstated the benefits.

In addition to the continuing issue of the authorization of the nerve-root-blockage procedure and potential penalties associated therewith, the WCJ was faced with two separate claims relative to the compensation benefits. Mr. Stockman sought a judgment reinstating the compensation benefits, and MTI sought a judgment terminating those benefits. The WCJ chose to terminate the benefits while still requiring MTI's adherence to its original order concerning the nerve-root-blockage procedure.

In his June 27, 2013 oral reasons for judgment, the WCJ found that Ms. Stockman's cervical complaints were not supported by the medical evidence given

3

Dr. Drury's testimony that her complaints could just have easily been caused by degeneration. This was clear error given the fact that Dr. Drury answered the question still without the benefit of the diagnostic test he had requested years before.

Specifically, the WCJ couched the weekly benefit issue as to whether Ms. Stockman was "still entitled to disability benefits[.]" Clearly that question could not be answered without the results of the diagnostic test ordered by Dr. Drury. The proper question to be answered, and the primary opinion answered this question in the negative, is whether at this time Ms. Stockman is entitled to a reinstatement of benefits. While her current physical condition finds her capable of engaging in gainful employment, she may well be entitled to some benefits depending on the results of the still incomplete medical picture. The current disposition of this matter addresses all of the issues in full.